You may proceed. Good morning, your honors. May it please the court. My name is Arlette Porter, and I represent Terrence Lee, who was the biological father, co-guardian, and joint custodian of the true party and interest in this matter, his daughter, Tenesia Lee. If your honors would allow me a few minutes just to give you a timeline as to how it is we got here. The minor child was born in July 2008. And in May of 2008, I'm sorry, in March of 2009, Mr. Lee filed his petition for joint custody of the child. In April of 2009, Hurley McKenna and Mertz, law firm on behalf of the mother, filed a petition for medical malpractice in the circuit court. Mr. Lee was not given notice. In June of 2010, Hurley McKenna and Mertz refiled that matter in the federal court. Mr. Lee was not given notice. And in May of 2011, the parties were granted joint custody of the minor child. In December of 2011, Hurley and McKenna and Mertz filed for guardianship in the probate court. Mr. Lee was not given notice. As a matter of fact, Exhibit A to their petition deliberately listed an address that Mr. Lee had not lived at for two to three years. Where was the child? Where is the child? Always with the mother? The child was always living with the mother. Because he seems not to have any knowledge of what's going on with the child. The child was always living with the mother, but he was never given notice of any of these proceedings, despite the fact that he had lived in the same place for almost five years. Never once was he given notice. Well, did he have visitation? He had visitation. Mom never informed him of anything, never gave him any documentation. And in January of 2012, co-guardianship was granted to both parties. And that's how we got here. Two years after Hurley McKenna and Mertz started this proceeding, Mr. Lee now finds out that there is a federal court proceeding going on with respect to his child. He's the biological father. He's the co-guardian. And he's a joint custodian. And never once was he given notice of any of these matters. So what does Mr. Lee do? He promptly comes to federal court and he files his appearance as co-plaintiff in this matter. And from that point on, he participated fully in every proceeding with respect to these proceedings. He attended depositions. We attended court callings, absolutely everything. In January 2014, settlement conference was held. Mr. Lee participated fully in that settlement conference. And at the end of that settlement conference, a result of a $13 million settlement came from that settlement conference. It was at that point in time that all hell seemed to break loose. The fact of the matter is, is that the settlement documents that were submitted to Mr. Lee, he had questions on. Now mind you, Mr. Lee is a principal of an elementary school. So he read the documents thoroughly. And he had questions. At that point, when he started to question those documents, of course he wants to garner the best settlement for his daughter. No one came back with answers for him. He refused to sign the documents because he wasn't getting answers to his questions. That's the first point in time when anyone ever mentioned that Mr. Lee was not a party to this matter. Mr. Lee had appeared. He had appeared before the court. He had argued before the court. He went to depositions. What was the source of confusion? One becomes a party by filing a complaint or by filing a motion for leave to intervene. And that truly is the fact. At no point in time was Mr. Lee instructed, at any point in time, that he was not properly before the court. He was treated at all. This is what a litigant has a lawyer for, to tell him what you do to become a party. You don't expect the judge, sua sponte, to tell somebody, look, you should be a party rather than, say, a litigating amicus curiae. What we believe is, according to Rule 19, Mr. Lee should have been enjoined by the court at that point in time. Of course, Rule 19 specifically says that if he is a party subject to service, and that he has an interest in that matter, and there's nobody adequately representing his interest, then the court must enjoin him. That's a mandate. It doesn't say shall. It says he must. Are you saying somebody has to be enjoined? I think you mean joined her. If you think somebody is subject to compulsory joined her under Rule 19, you file a motion to that effect. And that's exactly what we did, Judge. We filed for leave to enjoin Mr. Lee as a party in this matter. You mean to join him as a party? To join him as a party. But Rule 19 specifically says enjoined, and that's why I use that terminology. It says persons who are required to be joined, and then in that language, it uses the word enjoined her. Mr. Lee, at no point in time ever, was enjoined in this matter. And according to Rule 24, he also should have been allowed to intervene. And what we're asking this court to do is that, pursuant to Rule 19, or pursuant to Rule 24, that Mr. Lee be allowed to intervene or be enjoined in this matter, in this case, and subsequently that his attorneys feel he's not enjoined or enjoined her. Yes, sir. Well, as I understand it, you got a 30, I guess you'd say the mother's lawyers, got a $13 million settlement. And you claim that you should get a portion of the attorney seat. What we're claiming, Your Honor, is that Mr. Lee is the biological father, co-guardian, and joint custodian, that he entered into a contingency fee agreement with his attorneys in the same manner as the other co-guardian did, Ms. Humphreys. According to the district judge, you didn't do anything other than show up once in a while. Well, we beg to differ. We believe that we did loads. We attended depositions. No one can just walk in on a deposition. Well, attending a deposition, you didn't question a witness, did you, at the deposition? We were at the deposition, Your Honor, and there was no need to. Did you question the person being deposed? There were no questions that we had for that particular person because the Hurley McKenna firm had asked every question that we had. But if you just attend a deposition and you don't ask questions, what are you contributing to the litigation? What we were contributing, Your Honor, was the fact that we had two co-guardians who have the ability to contract on behalf of their daughter, who have the same interest as the daughter. One co-guardian was doing one thing without the other co-guardian knowing anything about it. The fact is that they are co-guardians of the one baby. And one co-guardian does not have any more rights than the second co-guardian. They both are on equal footing. If Mr. McKenna or Mr. Hurley asked a question, there was no need for me to ask the same question. We already had the answer. We were limited, of course, to the three to five hours of a deposition. We needed to get those things in there and get those things out. OK, well, thank you, Ms. Porter. Thank you very much, Your Honor, for your time. Mr. Hurley? Good morning. So the case was pending for five and a half years. And in that time, Ms. Porter filed one piece of paper, an appearance, two years into the litigation in federal court. And the first time she filed anything substantive was after the case settled and after she and her client agreed that it was a proper and good settlement in open court and after they signed a release. And the first time I talked to this attorney was on the phone when she insisted that she wasn't going to have her client sign the release until her name was put on the settlement check. And I told her that wasn't going to happen because the government wouldn't agree to it and I wouldn't agree to it. She deliberately then attempted to delay the purchase of an annuity on behalf of the child, which put the child at risk. Because if the annuity rates had changed, the child may have received less money. We went into probate court and pushed for a guardian ad litem to force signature. And it wasn't until we were in probate court that she and her client agreed to sign the release and the annuities were then purchased and the child was protected. Since then, she attempted to file a complaint, which is an exact copy of our complaint with her client's name on it. And then 10 months after the settlement, she tried to intervene, all of which is for the purpose of getting herself half the contingency fee in this case in a situation where she did no work, she took no risk, she appeared at four out of 20 depositions, asked no questions, and did nothing at any point that benefited the minor in this case. So the problem here is that in Illinois, Rule 1.5 of the Code of Ethics requires that attorneys only accept reasonable fees. And that means fees for which they do some service and they do some work that benefits a client, not fees  by a parent of a minor. And on the topic of why the father wasn't involved from the beginning, it's because the father chose not to be involved. The mother invited him to our office and we would have gladly accepted him as a client. He chose not to come. And so the situation we're in here is an attorney asking for an outlandishly unreasonable fee for doing no work, accepting no risk, and providing no benefit to a client. And it brings this profession into a bad light. Are there any questions? OK, thank you very much, Mr. Hurley. So I missed part of your time, it expired. You can have another minute, if you'd like. No, I appreciate it. Your Honor, the fact of the matter is we have co-guardians in this matter. We have one co-guardian who's the mother, another co-guardian who is the father. They are on equal footing and they are on equal light. Participation involves more than just asking a question at a deposition. The fact of the matter is that we fully participated in all of the proceedings, in all of the discussions, in all of the settlement conferences from day one to day one. Two years we didn't know about this case, two and a half years before we got in on this case. Because no notice was ever given to the father in this matter. Had he been given notice, we would have been in on this case from day one. He was not given notice. And no one can negate that fact. There's not been one documentation regarding the fact that he was ever given notice in this matter. You're saying that initially he did not, what counsel just said, that he said he didn't want to participate. That is not true at all. If Your Honor remembers my timeline, he filed for joint custody. The mom didn't file anything. The baby was almost a year old. He filed for joint custody of his daughter. And from day one, he's been playing catch up and discovery every step of the way, finding out what it is she's done so he can run into court to counteract that. He wants to be a part of his daughter's life. And he had been a part of his daughter's life every step of the way. The fact is that no one can get around the fact that he is co-guardian. He was, he was, the mom was enjoined, I'm sorry, the mom was compelled by two courts to keep the dad informed of this matter. And it's in our brief. The mom was informed by the custodial judge to keep the dad informed. She did not. That's the end of my question. Okay. Thank you, Ms. Porter. Thank you, Your Honor. Thank you to both counsel. Next case for argument, United States v. Marcius.